**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 12-CR-20059-ALTMAN**

**UNITED STATES**,

      *Plaintiff,*

v.

**JOSE ALVARADO**,

      *Defendant.*

_____/

## OMNIBUS ORDER

The Defendant, Jose Armando Alvarado, filed a *pro se* Motion for Modification of an Imposed Term of Imprisonment ("Compassionate Release Motion") [ECF No. 623], asking the Court to reduce his imprisonment to time served and to re-sentence him to probation. The Government filed its opposition, *see* Government's Response to Defendant's Motion for Compassionate Release ("Compassionate Release Response") [ECF No. 626], and Alvarado replied, *see* Reply Memorandum ("Compassionate Release Reply") [ECF No. 630]. The Government subsequently filed a notice indicating that the Bureau of Prisons ("BOP") had scheduled Alvarado for release to home confinement and asking us to deny the Compassionate Release Motion as moot. *See* Notice [ECF No. 631]. Alvarado responded and asked us to adjudicate his Compassionate Release Motion on the merits, notwithstanding his transfer to home confinement. *See* Response to Notice [ECF No. 632]. Because we conclude that Alvarado isn't entitled to the relief he seeks, the Motion is **DENIED**.

One more thing: From home confinement, Alvarado filed a Motion for Restitution Reduction ("Restitution Motion") [ECF No. 635], seeking to reduce his restitution payments from 15% of his gross earnings to 10%. The Government opposed that motion as well, *see* Response to the Defendant's Motion for Restitution Reduction ("Restitution Response") [ECF No. 636], and Alvarado replied, *see*

Defendant's Reply to the Government's Response in Opposition ("Restitution Reply") [ECF No. 637]. Because the Government didn't apply for a writ of garnishment or move for a court order before it garnished 15% of Alvarado's Social Security payments, we order the Government to **SHOW CAUSE** (1) why it shouldn't be enjoined from further collections above 10% of gross earnings without a court order, and (2) why it shouldn't be required to return the payments Alvarado has already made *in excess of* 10% of his gross earnings.

## THE FACTS

In January of 2012, a grand jury in this District indicted Alvarado and four other defendants for their role in a four-year mortgage fraud conspiracy. *See generally* Indictment [ECF No. 3]. In essence, the indictment alleged that the defendants conspired to defraud lending institutions by recruiting straw purchasers to buy properties for the benefit of the defendants and by submitting false information to the lenders. *See generally id.* Alvarado was the primary defendant, described as the owner and principal of two mortgage brokerage firms in Miami, Florida. *Id.* ¶ 11. And this was a family business: the other defendants were Alvarado's wife, daughter, sister, and nephew. *See id.* ¶¶ 10–15.

In June of 2012, a grand jury returned a superseding indictment, adding three new defendants—other members of Alvarado's family—and expanding the number of properties through which the defendants conducted their scheme. *See* Superseding Indictment [ECF No. 116]. The superseding indictment contained seventeen counts (fifteen against Alvarado), including conspiracy to commit bank and wire fraud, in violation of 18 U.S.C. § 1349; substantive wire fraud, in violation of 18 U.S.C. § 1343; and substantive bank fraud, in violation of 18 U.S.C. § 1344. *Id.* at 7–18. After a six-week trial in front of now-Senior Judge William P. Zloch, the jury found Alvarado guilty on all fourteen of the superseding indictment's substantive counts against him. *See generally* Jury Verdict [ECF No. 345]. The jury did not reach a verdict on the conspiracy charge. *See id.* at 1.

At the sentencing hearing on November 14, 2013, the government moved to dismiss the conspiracy count against Alvarado. *See* Alvarado Sentencing Hr'g Tr. [ECF No. 589] at 50:1–4. The parties also stipulated to a loss amount of between $1,000,000 and $2,500,000 (one level lower than the PSR had recommended) and a sixteen-level increase to the base offense level. *Id.* at 6, 39. Alvarado contested several of the PSR's sentencing enhancements. *Id.* at 4–5. The Court granted Alvarado's objection to the abuse-of-trust enhancement but denied his objections to enhancements for obstruction of justice and sophisticated means. *Id.* at 38–39. As a result, his total offense level was 31 with a guideline imprisonment range of 108 to 135 months. *Id.* at 39.

After considering the statutory factors set forth in 18 U.S.C. § 3553(a), Judge Zloch sentenced Alvarado to 135 months imprisonment as to each count—all to be served concurrently. *Id.* at 47. He specifically found that a "sentence at the high end of the guideline range will serve the sentencing considerations of punishment and deterrence." *Id.* Judge Zloch also ordered Alvarado to serve three years of supervised release. *Id.* at 48. On January 31, 2014, the Court entered an Amended Judgment of Conviction [ECF No. 513], directing Alvarado to pay $2,438,591 in restitution and imposing a $1,400 special assessment, "due immediately."

The Eleventh Circuit affirmed Alvarado's conviction and sentence, rejecting his arguments that (1) the Government presented insufficient evidence to support his bank and wire fraud convictions, (2) the district court erred by failing to hold a hearing to determine whether his sleep apnea rendered him incompetent, (3) the district court erred by failing to give a "good faith" defense instruction to the jury, and (4) the district court erred at sentencing by applying a "sophisticated means" enhancement. *See generally United States v. Alvarado*, 643 F. App'x 853, 858 (11th Cir. 2016).

Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*; *see United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020) (applying the framework). The Court will discuss each of these four steps in turn.

## I.    Exhaustion of Administrative Remedies

The Court may consider Alvarado's Compassionate Release Motion only "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant *after* the defendant has *fully exhausted* all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant' facility, whichever is earlier[.]" § 3582(c)(1)(A) (emphases added). Alvarado sought relief directly with the BOP by filing, on December 5, 2019, an Inmate Request to Staff at the prison where he's currently incarcerated. *See* Compensation Release Response at Ex. 1. The Warden rejected his

---

[1] Although Alvarado has been transferred to home confinement, we consider his Motion for Compassionate Release *on the merits* because it's still possible for the Court to grant the relief Alvarado seeks—namely, a reduction in the term of his imprisonment. That said, as we discuss below, we decline to grant him that relief and, although we conclude that he would not be entitled to compassionate release anyway, we note that the transfer to home confinement bolsters our conclusion that there aren't compelling circumstances warranting the extraordinary relief he's after.

request on December 18, 2019—before he filed his Compassionate Release Motion—and the Government does not contest exhaustion. *See generally id.*

## II. 18 U.S.C. § 3553(a)

Alvarado spends most of his time arguing that his sentence was unjust and "unusually harsh," and that the § 3553(a) factors weigh in favor of a sentence reduction. *See* Compassionate Release Motion at 2–3 (arguing that the Court didn't properly consider his age and limited role in the conspiracy). But the Court considered those factors when it sentenced him, and he didn't challenge that aspect of his sentence. *See Alvarado*, 643 F. App'x at 858. Instead, he questioned only the Court's application of an enhancement for "sophisticated means." *Id.* As we've said, the Eleventh Circuit affirmed Alvarado's sentence, *see id.*, and Alvarado cannot now relitigate the § 3553(a) factors he chose not to dispute on direct appeal. In other words, "to the extent that they are applicable," the § 3553(a) factors counsel *against* a reduction here. *See, e.g., United States v. Post*, 2020 WL 2062185, at *2 (S.D. Fla. Apr. 29, 2020) (declining to reconsider the § 3553(a) in a motion for a reduced sentence because "much of the information that [the defendant] provide[d] in his [motion] was before the Court at the time of his sentencing").

## III. 18 U.S.C. § 3582

The statute that governs sentence reductions for compassionate medical release provides, in pertinent part, as follows:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without

conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i)      extraordinary and compelling reasons warrant such a reduction; or

(ii)     the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and

(B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; . . .

18 U.S.C. § 3582.

Although § 3582 does not define the "[e]xtraordinary and compelling reasons" that warrant a reduction, Congress has authorized the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under § 3582]," 28 U.S.C. § 994(t). The Commission has helpfully defined the contours of the test as follows:

1.   **Extraordinary and Compelling Reasons.--**Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

**(A) Medical Condition of the Defendant.**

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

6

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances.--** (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children; (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

As a threshold matter, the reference to "subdivision (2)" requires Alvarado to show that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). And § 3142(g), in turn, instructs federal courts to consider the following factors when determining whether a defendant poses a danger to the safety of any other person or the community:

**(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

Alvarado bears the burden of establishing both that his circumstances qualify as "extraordinary and compelling reasons" and that he no longer represents a danger to any other person or the community. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *see also Cannon v. United States*, 2019 WL 5580233, at \*2 (S.D. Ala. Oct. 29, 2019); *United States v. Heromin*, 2019 WL 2411311, at \*2 (M.D. Fla. June 7, 2019). The Defendant's Compassionate Release Motion must be denied because he cannot satisfy the tests set forth in U.S.S.G. § 1B1.13 cmt. n.1.

*First*, Alvarado cannot (and does not try to) satisfy the "Age of the Defendant" test because, though he is 70 years old, he has not alleged that he suffers from any age-related decline. *See generally* Compassionate Release Motion. Nor does he meet the "Medical Condition of the Defendant" test, which contains two elements. The first requires him to show that he suffers from a "terminal illness." U.S.S.G. § 1B1.13 cmt. n.1(1)(A)(i). The second requires him to demonstrate that he suffers from conditions "that substantially diminish[ ] [his] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(1)(A)(ii).

Alvarado says that he "does suffer some medical issues which could easily turn terminal if not properly taken care of." Compassionate Release Motion at 2. But he doesn't describe those medical issues, doesn't tell us how serious they are, and never explains why they cannot be adequately addressed by the BOP. *See generally id.* Nor does he argue that his conditions, on their own, constitute (1) a "serious physical or medical condition," (2) a "serious functional or cognitive impairment," or (3) a condition contributing to his "deteriorating physical or mental health," as required by § 1B1.13 cmt. n.1(1)(A)(ii). *Id.* Indeed, Alvarado has admitted (in his administrative filing with the BOP) that his purported medical conditions were "*not very server* [sic]." *Id.* at 7 (emphasis added). Most importantly, even if Alvarado *did* suffer from some serious medical conditions while he was in prison, he's since been transferred to home confinement, where he is presumably more comfortable and where he can receive in-home treatment. And, while he responded to the Court's Notice, he never explains why he believes his confinement *at home* has failed to mitigate his "compelling" circumstances.

*Second*, Alvarado seems to suggest that he meets the "Family Circumstances" test. *See generally id.* But that section is inapplicable here. Section 1B1.13(C)(i) applies to the death or incapacitation of the caregiver of the defendant's minor child or minor children. Alvarado's three children are all adults—and two of them were co-defendants in this case. And, while it's true that § 1B1.13(C)(ii) applies to the incapacitation of the defendant's spouse when the defendant would be the only available caregiver for that spouse, Alvarado doesn't claim *either* that his wife is incapacitated or that he is her only available caregiver. *See generally id.* Again, however, even if she *were* incapacitated, Alvarado is now at home—and thus has ample opportunity to care for her.

*Finally*, Alvarado's claim to rehabilitation doesn't, standing alone, constitute compelling circumstances. *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."); *United States v. Fine*, 982 F.3d 1117, 1119 (8th Cir. 2020)

(same); *United States v. Saldana*, 807 F. App'x 807 (10th Cir. 2020) (same); *United States v. Green*, 2020 WL 6887970 , at *2 (S.D. Fla. Sept. 14, 2020) (same).

Because Alvarado has not shown that his circumstances are either "compelling" or "extraordinary," his Compassionate Release Motion must be **DENIED**.

## RESTITUTION REDUCTION

The Court ordered Alvarado to pay a $1,400 assessment and restitution of $2,438,591.00. *See* Amended Judgment of Conviction at 5. The Court required that the restitution be paid as follows: (1) 50% of wages, if he worked in a Federal Prison Industries ("UNICOR") job, or $25 per quarter, and then (2) "[u]pon release of incarceration, the defendant shall pay restitution at the rate of 10% of his monthly gross earnings, until such time as the court may alter that payment schedule in the interests of justice." *Id.* None of these payments "preclude[d] the government from using other assets or income of the defendant to satisfy the restitution obligations." *Id.* The special assessment of $1,400 was payable in a lump sum "due immediately." *Id.* at 6.

Alvarado argues that it is improper for the Government to deduct 15% of his gross earnings from his Social Security payments, as the Amended Judgement required only 10% of his monthly gross income upon release. *See* Restitution Motion ¶ 1. He says that he has "no savings" and that he collects only Social Security retirement payments. *Id.* ¶ 2. Although it isn't entirely clear, Alvarado seems to suggest that he has no other form of income. *Id.*

The Government points out—and Alvarado doesn't contest—that (1) a total of $535.56 has been withheld from Alvarado's Social Security payments through March of 2021, (2) these funds were applied to his special assessment, which has a remaining balance of $308.44, (3) because the special assessment is paid first in accordance with the terms of the judgement, no amounts have been applied to restitution, and (4) Alvarado hasn't presented any information regarding the total income he has

received since his release to home confinement, and he hasn't made any voluntary payments since his release. *See* Restitution Response at 2; *see generally* Restitution Reply.

In Alvarado's view, the 15% collection from Social Security can be imposed *only* by court order. *See* Restitution Reply. The Government argues that the restitution order doesn't limit its ability to pursue other collection efforts, and that the Mandatory Victims Restitution Act allows it to collect restitution from Social Security income. *See* Restitution Response at 2. Whether or not that's true, though, the Government doesn't cite any authority for its position it may garnish Social Security income *without* a court order. *See generally id.* To the contrary, the cases the Government relies on involve applications for writs of garnishment. *See, e.g.*, *United States v. Ekong*, 518 F.3d 285, 286 (5th Cir. 2007) ("The Government filed an application for writ of garnishment upon Ekong's interest in pension benefits[.]"); *United States v. Robles*, 2013 WL 3778629, at *1 (S.D. Fla July 18, 2013) ("[T]he Government filed the instant motion seeking an order requiring [the defendant's law firm] to transfer $4,953.46 it is holding in its trust account for [the defendant] for payment toward [the defendant's] restitution."); *see also, e.g.*, *United States v. Fussell*, 2013 WL 12080161, at *1 (S.D. Fla. Oct. 31, 2013), *aff'd*, 567 F. App'x 869 (11th Cir. 2014) ("On July 19, 2012, in order to satisfy the restitution judgment, the Government obtained issuance of a Writ of Garnishment[.]"). Accordingly, the Government must explain—and cite authority for—its view that it is authorized to garnish 15% of Alvarado's Social Security income *without* a court order.

*** *

After a careful review of the parties' filings, the record, and the governing law, the Court hereby **ORDERS and ADJUDGES** as follows:

1. The Defendant's Compassionate Release Motion [ECF No. 623] is **DENIED**.

2. The Court **DEFERS** ruling on the Restitution Motion [ECF No. 635].

3. By July 13, 2021, the Government shall **SHOW CAUSE** (1) why it shouldn't be enjoined from further collections above 10% of gross earnings without a court order, and (2) why it shouldn't be required to return the payments Alvarado has already made *in excess of* 10% of his gross earnings.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 29th day of June 2021.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record