UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-CR-20059-ALTMAN

**UNITED STATES**,

    *Plaintiff*,

v.

**JOSE ALVARADO**,

    *Defendant*.

_____/

## OMNIBUS ORDER

The Defendant, Jose Armando Alvarado, filed a Motion for Restitution Reduction ("Restitution Motion") [ECF No. 635]. In it, he seeks to reduce his restitution payments from 15% of his gross earnings to 10%. *Id.* He also filed a Motion for Restitution of Incorrect Deduction of the Total Economic Stimulus Aid of COVID 19 ("Second Restitution Motion") [ECF No. 638]. For the following reasons, we **DENY** both motions.

### THE FACTS

In January of 2012, a grand jury in this District indicted Alvarado and several other defendants for their role in a four-year mortgage-fraud conspiracy. *See* Superseding Indictment [ECF No. 116]. In essence, the indictment alleged that the defendants conspired to defraud lending institutions by recruiting straw purchasers to buy properties for the benefit of the defendants and by submitting false information to the lenders. *See generally id.* Alvarado was the primary defendant—described as the owner and principal of two mortgage-brokerage firms in Miami, Florida. *Id.* ¶ 11.

After a six-week trial in front of now-Senior Judge William P. Zloch, the jury found Alvarado guilty on all fourteen of the superseding indictment's substantive counts. *See generally* Jury Verdict [ECF No. 345]. The jury did not reach a verdict on the conspiracy charge. *See id.* at 1. Judge Zloch sentenced

Alvarado to 135 months in prison as to each count—all to be served concurrently. *Id.* at 47. On January 31, 2014, the Court entered an Amended Judgment of Conviction [ECF No. 513], directing Alvarado to pay $2,438,591 in restitution and imposing a $1,400 special assessment, "due immediately." *Id.* The Court required Alvarado to pay restitution as follows: (1) during incarceration, 50% of any wages Alvarado earned if he worked in a Federal Prison Industries ("UNICOR") job, or $25 per quarter if he didn't work in a UNICOR job; and (2) "[u]pon release of incarceration . . . 10% of his monthly gross earnings, until such time as the court may alter that payment schedule in the interests of justice." *Id.* None of these payments "preclude[d] the government from using other assets or income of the defendant to satisfy the restitution obligations." *Id.* The special assessment of $1,400 was payable in a lump sum "due immediately." *Id.* at 6.

## RESTITUTION MOTION

Alvarado argues that it was improper for the Government to deduct 15% of his gross earnings from his Social Security income. *See* Restitution Motion ¶ 1. He says that the Amended Judgment required him to remit, after release, *only* 10% of his monthly gross income. *Id.* He adds that he has "no savings" and that he collects only Social Security retirement payments. *Id.* ¶ 2. And, although this isn't entirely clear, he seems to suggest that he has no other form of income. *Id.*

The Government points out—and Alvarado doesn't contest—that (1) a total of $535.56 has been withheld from Alvarado's Social Security payments through March of 2021; (2) these funds were applied to his special assessment, which has a remaining balance of $308.44; (3) because the special assessment is paid *first* in accordance with the terms of the judgment, no amounts have been applied to restitution; and (4) Alvarado hasn't presented any information regarding the total income he's received since his release to home confinement, and he hasn't made any voluntary payments since then. *See* Response to the Defendant's Motion for Restitution Reduction ("Restitution Response")

[ECF No. 636] at 2; *see also* Defendant's Reply to the Government's Response in Opposition ("Restitution Reply") [ECF No. 637].

In Alvarado's view, the Government needs permission from the Court to collect 15% of his Social Security income. *See* Restitution Reply. The Government, by contrast, says that the Court's restitution order didn't limit its ability to pursue *other* collection efforts, and it notes that the Mandatory Victims Restitution Act allows it to collect restitution from Social Security income. *See* Restitution Response at 2. But, because the Government didn't (initially) cite any authority for its position that it could lawfully garnish Social Security income *without* a court order, we instructed the Government to show cause (1) why it shouldn't be enjoined from any further collections above 10% of gross earnings, and (2) why it shouldn't be required to return the payments Alvarado has already made *in excess of* 10% of his gross earnings. *See* Omnibus Order [ECF No. 640] at 10–12.

The Government filed a Response Showing Cause for Collection of Restitution Through Treasury Offset Program ("Response to OSC") [ECF No. 641]. There, it explained what we suspected—that a garnishment proceeding under the Federal Debt Collections Procedure Act ("FDCPA") *does* require the Government to apply for (and obtain) a writ of garnishment *along with* a court order. *Id.* at 2. But the Government clarified that a writ of garnishment is not the *only* means by which it can enforce a criminal restitution order. *Id.* Instead, as the Government has now explained, it can (and, in this case, did) use the Treasury Offset Program ("TOP") to collect restitution payments. *Id.*

Under the TOP, federal agencies with a claim against a debtor may collect that debt by an administrative offset—provided they've notified the debtor and given him an opportunity to dispute the debt or to make other arrangements to pay it. *See* 31 U.S.C. §§ 3711; 3716(a), (c)(6) (authorizing an agency whose debt collection attempts have been unsuccessful to "collect the claim by administrative offset," and requiring appropriate notice to the debtor, so that he can dispute the debt

or make other arrangements to pay it); *see generally Astrue v. Ratliff*, 560 U.S. 586 (2010) (describing the government's offset authority). After the debtor receives notice of the TOP offset—and upon the agency's proper certification—the Treasury Department *must* administratively offset the debt. *See Johnson v. U.S. Department of Treasury*, 300 F. App'x 860, 862 (11th Cir. 2008) ("If properly certified, the Treasury Department must administratively offset the debt." (citing 31 U.S.C. § 3716(c)(1)(A))). And, as relevant here, a court order is *not* required before an agency can refer a debtor to the TOP. *See United States v. Beulke*, 892 F. Supp. 2d 1176, 1187 (D.S.D. 2012) ("[A] court order is not a prerequisite to referring a debtor to the TOP.").

Notably, the Government can use the TOP procedures to collect a debt that arose because of a criminal restitution order. *See United States v. Pickett*, 505 F. App'x 838, 843 (11th Cir. 2013) (denying a motion to enjoin the government from offsetting Social Security benefits to collect a restitution judgment); *see also United States v. Mayer*, 2010 WL 4916561, at *1 (D.N.H. Dec. 3, 2010) ("The TOP is plainly an administrative practice and procedure under federal law that, by its terms, is available as a means to collect debts owed the United States."). And Social Security payments *are* subject to the TOP offset. *See Pickett*, 505 F. App'x at 839; *see also United States v. Weissenbach*, 2010 WL 2246177, at *1 (W.D.N.C. June 2, 2010) ("While Defendant requests relief from the offset of his Social Security benefits, he has provided the Court with no authority or evidence to support such a request. As provided in the government's response, Social Security payments are subject to TOP offset pursuant to the Debt Collection Improvement Act of 1996. Such offsets are not unlimited, but it appears that the government's offset in this matter complies with the statutory requirements in that it does not exceed 15% of Defendant's benefit.").

Here, the Government has shown that, on March 17, 2014, it gave Alvarado notice of its intent to offset his Social Security income. *See generally* Response to OSC; Notice of Intent to Offset [ECF No. 641-1]. It's also satisfied the other statutory factors. *See generally* Response to OSC; Notice of

4

Intent to Offset. Nor does Alvarado suggest otherwise. He doesn't, for instance, contend that the Government *failed* to follow the proper administrative procedures, *see generally* Restitution Motion, and he never claims that he objected to the offset within the 60 days the notice gave him, *see generally id.*; Response to OSC at 5.

Moreover, because the offset is an administrative process, Alvarado must seek administrative relief as prescribed by the statute and its implementing regulations. *See Mayer*, 2010 WL 4916561, at *1–2 (to challenge a TOP offset, the defendant must, "in the first instance, seek administrative relief as prescribed by the statute and implementing regulations"). Judicial review of the administrative process is available, "but it is limited,"—and, to obtain relief, a defendant "would generally be required to show arbitrary, capricious, or plainly unlawful conduct on the part of the administrative decision-makers." *Id.* Alvarado hasn't done any of that here: he hasn't challenged any of the administrative processes that were used to enroll him in the TOP; he doesn't suggest that he exhausted his administrative remedies; and he makes no effort to show that the agency's conduct was arbitrary, capricious, or plainly unlawful. *See generally* Restitution Motion. Accordingly, the Restitution Motion is **DENIED**.

## SECOND RESTITUTION MOTION

Alvarado also asks the Court to require the Government to return the $1,805 in COVID-19 stimulus checks he received through the American Rescue Plan Act of 2021, contending that it was unconstitutional for the Government to confiscate those funds. *See generally* Second Restitution Motion. Stimulus checks, however, are not immune from restitution. *See, e.g.*, *United States v. Johnson*, 2021 WL 3520703, at *1 (N.D. Ind. Aug. 10, 2021) (rejecting the argument that "the law does not allow [the defendant's] money to be garnished because the funds stem from a stimulus check"); *United States v. Kieffer*, 2021 WL 1758815, at *1 (S.D. Ill. May 4, 2021) (permitting the government to collect, to satisfy a restitution judgment, funds "which came from an economic stimulus payment"); *United*

*States v. Myers*, 2021 WL 3502469, at *1 (D.N.D. Aug. 9, 2021) ("The Court is not aware of any provision in the America Rescue Plan Act of 2021 which exempts stimulus funds from being seized by the Government for application toward outstanding criminal monetary penalties. The Court finds it highly unlikely Congress would have intended any such outcome as doing so would benefit convicted felons at the expense of their victims."). Accordingly, the Second Restitution Motion is likewise **DENIED**.

***

After a careful review of the parties' filings, the record, and the governing law, the Court hereby **ORDERS and ADJUDGES** as follows:

1. The Restitution Motion [ECF No. 635] is **DENIED**.
2. The Second Restitution Motion [ECF No. 638] is **DENIED**.

**DONE AND ORDERED** in Miami, Florida this 30th day of September 2021.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record